SLR:LDM:TYH
F.#2012V00021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**12 M 497**

------------------------------X

In re the Seizure of:

A SUM OF FUNDS NOT TO EXCEED
$350,604.23 HELD AT TD BANK
ACCOUNT NUMBER 4259179955 HELD
IN THE NAME OF JOSH INVESTMENTS
LLC;

------------------------------X

**AFFIDAVIT OF**
**JAMES H. GRATHWOHL**
**IN SUPPORT OF AN**
**APPLICATION FOR**
**SEIZURE WARRANT**

James H. Grathwohl, being duly sworn, deposes and says:

1. I am a Special Agent with the United States
Department of Homeland Security ("DHS"). I have held the position
of Special Agent for approximately nineteen years. In addition, I
was assigned to the Joint Terrorism Task Force for seven years.

2. I am currently a member of the El Dorado Task Force
(the "Task Force"), which is comprised of federal, state and local
law enforcement officers. The Task Force is organized and led by
the DHS and focuses on money laundering investigations. Through my
work with the Task Force, I have participated in investigations
relating to the laundering of illegal proceeds through the use of
structured cash deposits.[1]

---

[1] Pursuant to Sections 403 and 412 of the Homeland Security
Act of 2002 (Pub. L. 107-296), in conjunction with a Delegation
from the Secretary of Treasury (Treasury Order 100-16), certain
powers previously held by the U.S. Customs Service, including the
power under 18 U.S.C. § 981(b)(1) to seize property subject to
forfeiture, were transferred to DHS.

3.      This affidavit is submitted in support of the United
States' request for a seizure warrant, pursuant to 18 U.S.C. §§
981(b) and 982, 21 U.S.C. §§ 853 and 881(b), and 31 U.S.C. §
5317(c), for an amount of funds not to exceed $350,604.23 held at
TD Bank account number 4259179955 held in the name of Josh
Investments LLC (the "Target Account"). Such funds constitute; (a)
property involved in violations of 18 U.S.C. §§ 1956 and/or 1957,
and are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A)
and 982(a)(1)(A); (b) funds traceable to the sale of narcotics and
subject to forfeiture pursuant to 21 U.S.C. §§ 853 and 881; and/or
(c) property involved in violations of 31 U.S.C. § 5324 and subject
to forfeiture pursuant to 31 U.S.C. § 5317(c).

4.      I have not included each and every fact I know about
this investigation in this affidavit. Rather, I am setting forth
herein the facts that are required to establish probable cause to
seize funds on deposit in the Target Account.

### STATUTORY BACKGROUND

5.      Pursuant to 18 U.S.C. §§ 981(a)(1)(A) and
982(a)(1)(A), any property, real or personal, which is involved in
a transaction or attempted transaction in violation of federal
money laundering laws, 18 U.S.C. §§ 1956 or 1957, and any property
traceable thereto, is subject to forfeiture to the United States.

6.      Pursuant to 21 U.S.C. §§ 853 and 881(a)(6), all
property, real or personal, which constitutes or is derived from

2

proceeds traceable to the sale of a controlled substance or was used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the sale of a controlled substance, is subject to forfeiture to the United States.

7.    Pursuant to 31 U.S.C. § 5317(c), any property involved in a violation of 31 U.S.C. § 5324, or a conspiracy to commit any such violation, and any property traceable to such property, is subject to forfeiture to the United States.

8.    This Court is empowered to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 853(f), 31 U.S.C. § 5317 and 21 U.S.C. § 881 by 18 U.S.C. § 981(b), 31 U.S.C. § 5317(c) and 21 U.S.C. § 881(b), respectively.

## MONEY LAUNDERING

9.    Narcotics traffickers amass large cash proceeds from the sale of narcotics in the United States. The traffickers, or those associated with the traffickers, frequently attempt to give the impression of legitimacy to those proceeds; i.e., to "launder" them by making the proceeds appear to have been generated by a legitimate source.    The traffickers must also devise various methods to remit those narcotics proceeds to suppliers of narcotics located in Colombia and other South American countries, which are known source locations of narcotics, without alerting governmental or law enforcement agencies in either country.

3

10. In order to accomplish this goal, narcotics traffickers frequently utilize domestic and foreign banks and/or financial institutions in order both to make their narcotics profits appear to be from legitimate sources and to move those profits through the financial system into the countries where narcotics are produced.

11. A popular method to launder narcotics proceeds is for narcotics traffickers, through a third party, to "sell" their narcotics proceeds in the United States for pesos in Colombia. This practice, commonly known as the Black Market Peso Exchange ("BMPE"), is centered on a BMPE broker who can bring the drug dollars and the legitimate pesos together.

12. In a common BMPE scheme, a BMPE broker will identify a South American businessperson, who imports goods from places such as the United States, China, or Panama. The BMPE broker will offer the South American businessperson an opportunity to pay the debt owed to the exporter in the foreign country at a significant discount compared to making the payment through a South American bank. The South American businessperson who agrees to this scheme will then turn over the payment for the imported goods in the form of pesos to the BMPE broker who in turn will contact a Drug Trafficking Organization ("DTO"). When the BMPE broker contacts the DTO, the broker will offer the pesos in South America in exchange for the narcotics proceeds which are located in the United

States.

13. The BMPE broker will then arrange to have the narcotics proceeds picked up by a member of the BMPE broker's organization. These money pick-ups will usually occur between two people who have never met before and will most likely never meet again. These pick-ups frequently involve several hundred thousand dollars in narcotics proceeds.

14. Following the money pick-up, the BMPE broker arranges to forward those funds to the exporter in the United States. This is frequently accomplished by remitting those funds directly to the exporter by depositing the narcotics proceeds into accounts held by the exporter. Frequently, these deposits can be made in different geographical locations, where the DTO is located, rather than transporting illicit dollars to the location where the exporter is located.

## BANK SECRECY ACT

15. The Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5313 et. seq., also known as the Bank Secrecy Act (the "BSA"), was designed to combat money laundering and other crimes by imposing reporting requirements on virtually all transactions involving more than $10,000 in United States currency.

16. Specifically, under 31 U.S.C. § 5313(a) and its related regulations, when a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of

5

U.S. coins or currency ("cash") in an amount greater than $10,000, the institution shall file a Currency Transaction Report ("CTR") for each cash transaction, such as, by way of example, a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution. CTR's are filed with the Financial Crimes Enforcement Network ("FinCen") at the Detroit Data Center on forms that require, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

17. Many individuals involved in illegal activities, such as narcotics trafficking and money laundering, are aware of the reporting requirements and take active steps to cause financial institutions to fail to file CTRs. These active steps are often referred to as "structuring." They involve making multiple cash deposits or withdrawals, in amounts less than $10,000, but which in the aggregate exceed $10,000, to multiple banks and/or branches of the same bank on the same day or consecutive days. Structuring is prohibited by 31 U.S.C. § 5324.

18. Finally, pursuant to 31 U.S.C. § 5331 and related regulations, any trade or business that receives more than $10,000 in one or more related transactions, is required to collect personal identifying information of the customer, and must file that information on a form filed with the Internal Revenue Service ("IRS"). These forms are commonly referred to as "form 8300."

6

Businesses that structure funds into their bank accounts will frequently fail to file form 8300s in an attempt to further hide their cash activity.

**FACTS**

19. The Target Account is held in the name of Josh Investments LLC ("Josh") which is a business incorporated in the state of Florida. Cecil Riley is the sole signatory to the Target Account.

20. According to documents used to open the Target Account, Josh is a property management company based in Philadelphia, Pennsylvania. Public records indicate that Josh is located at 5623 Chester Avenue, Philadelphia, Pennsylvania.

21. From June 6, 2011, to December 16, 2011, there were one hundred and sixty-two (162) suspicious cash deposits made into the Target Account that were indicative of structuring. Specifcally, there were numerous and regular cash deposits which were made in individual dollar amounts of between $55 and $10,000. While there was no one deposit that exceeded $10,000, there were numerous instances where deposits made on the same day, or on consecutive business days, aggregated to amounts in excess of $10,000. The total amount of this structuring was $350,604.23. **Bold** transactions indicate same or consecutive business day transactions:

7

| Date | Amount | Location |
|------|--------|----------|
| 6/24/11 | $600.00 | Valley Stream, NY |
| 6/24/11 | $1,310.00 | Valley Stream, NY |
| | | |
| 6/27/11 | $1,481.00 | Havertown, PA |
| 6/27/11 | $7,600.00 | Cherry Hill, NJ |
| 6/27/11 | $1,100.00 | Miami Lakes, FL |
| 6/27/11 | $3,000.00 | Old Brookville, NY |
| | | |
| 6/29/11 | $5,000.00 | Brooklyn, NY |
| 6/29/11 | $4,000.00 | Old Brookville, NY |
| 6/29/11 | $4,000.00 | Old Brookville, NY |
| | | |
| 7/8/11 | $1,900.00 | Philadelphia, PA |
| 7/8/11 | $10,000.00 | Philadelphia, PA |
| 7/8/11 | $374 | Valley Stream, NY |
| 7/8/11 | $776 | Valley Stream, NY |
| 7/8/11 | $4,000.00 | Old Brookville, NY |
| | | |
| 7/25/11 | $6,215.00 | Brooklyn, NY |
| 7/25/11 | $1,500.00 | Miami Lakes, FL |
| 7/26/11 | $500.00 | Miami Lakes, FL |
| 7/27/11 | $700.00 | Hollis, NY |
| 7/28/11 | $1,464.00 | Miami Lakes, FL |
| | | |
| 8/2/11 | $600.00 | Fort Lauderdale, FL |
| 8/2/11 | $1,401.10 | Valley Stream, NY |
| 8/2/11 | $6,000.00 | Old Brookville, NY |
| | | |
| 8/4/11 | $2,000.00 | Pelham, NY |
| 8/4/11 | $120.00 | Valley Stream, NY |
| 8/4/11 | $241.00 | Valley Stream, NY |
| 8/4/11 | $440.00 | Valley Stream, NY |
| 8/5/11 | $7,325.00 | Brooklyn, NY |
| | | |
| 8/8/11 | $701.00 | Valley Stream, NY |
| 8/8/11 | $2,000.00 | Old Brookville, NY |
| 8/9/11 | $1,000.00 | Old Brookville, NY |
| | | |
| 8/11/11 | $1,518.00 | Miami Lakes, FL |
| 8/11/11 | $500.00 | Old Brookville, NY |
| 8/12/11 | $705.56 | Valley Stream, NY |

| Date | Amount | Location |
|---|---|---|
| 8/16/11 | $2,300.00 | Lawrence, NY |
| 8/16/11 | $1,500.00 | Old Brookville, NY |
| 8/16/11 | $700.00 | Hollywood, FL |
| 8/22/11 | $5,100.00 | Pelham, NY |
| 8/22/11 | $2,000.00 | Pelham, NY |
| 8/24/11 | $100.00 | Philadelphia, PA |
| 8/24/11 | $3,000.00 | North Miami, FL |
| 9/6/11 | $500.00 | Old Brookville, NY |
| 9/7/11 | $500.00 | Old Brookville, NY |
| 9/8/11 | $500.00 | Old Brookville, NY |
| 9/9/11 | $300.00 | Miami Lakes, FL |
| 9/9/11 | $6,400.00 | Philadelphia, PA |
| 9/9/11 | $1,500.00 | Old Brookville, NY |
| 9/12/11 | $600.00 | Old Brookville, NY |
| 9/14/11 | $4,990.00 | Pelham, NY |
| 9/14/11 | $300.00 | Philadelphia, PA |
| 9/15/11 | $5,700.00 | Philadelphia, PA |
| 9/15/11 | $1,180.00 | Valley Stream, NY |
| 9/16/11 | $1,450.00 | Pelham, NY |
| 9/16/11 | $500.00 | Old Brookville, NY |
| 9/21/11 | $1,000.00 | Old Brookville, NY |
| 9/21/11 | $3,723.00 | Brooklyn, NY |
| 9/22/11 | $2,000.00 | Old Brookville, NY |
| 9/28/11 | $2,500.00 | Hollywood, FL |
| 9/28/11 | $3,634.00 | Brooklyn, NY |
| 9/29/11 | $1,300.00 | Hollywood, FL |
| 9/30/11 | $60.00 | Hollis, NY |
| 9/30/11 | $340.00 | Hollis, NY |
| 10/6/11 | $1,320.00 | Miami Lakes, FL |
| 10/6/11 | $2,785.00 | Tamarac, FL |
| 10/6/11 | $7,000.00 | Brooklyn, NY |
| 10/6/11 | $7,000.00 | Brooklyn, NY |
| 10/10/11 | $1,000.00 | Old Brookville, NY |
| 10/11/11 | $1,000.00 | Miami Lakes, FL |
| 10/11/11 | $600.00 | Old Brookville, NY |
| 10/12/11 | $55.00 | Valley Stream, NY |

| 10/12/11 | $345.00 | Valley Stream, NY |
| 10/12/11 | $3,162.00 | Brooklyn, NY |
| 10/13/11 | $3,000.00 | Old Brookville, NY |
| 10/14/11 | $3,000.00 | Pelham, NY |
| 10/14/11 | $7,655.00 | Brooklyn, NY |
| 10/14/11 | $6,000.00 | Old Brookville, NY |
| 10/15/11 | $1,500.00 | Old Brookville, NY |
| 10/17/11 | $1,000.00 | Miami Lakes, FL |
| 10/17/11 | $1,625.00 | Valley Stream, NY |
| 10/18/11 | $300.00 | Miami Lakes, FL |
| 10/19/11 | $980.00 | Miami Lakes, FL |
| 10/21/11 | $3,810.00 | Brooklyn, NY |
| 10/24/11 | $1,000.00 | Valley Stream, NY |
| 10/25/11 | $600.00 | Brooklyn, NY |
| 10/25/11 | $955.00 | Miami Lakes, FL |
| 10/26/11 | $225.00 | Merrick, NY |
| 10/26/11 | $1,060.00 | Scarsdale, NY |
| 10/26/11 | $7,402.00 | Brooklyn, NY |
| 10/31/11 | $200.00 | Pembroke Pines, FL |
| 10/31/11 | $1,000.00 | Pembroke Pines, FL |
| 10/31/11 | $4,527.00 | Brooklyn, NY |
| 10/31/11 | $600.00 | Old Brookville, NY |
| 11/1/11 | $840.00 | Hollis, NY |
| 11/1/11 | $500.00 | Tamarac, FL |
| 11/1/11 | $1,000.00 | Hollis, NY |
| 11/1/11 | $5,000.00 | Pelham, NY |
| 11/1/11 | $7,910.00 | Richmond Hills, NY |
| 11/2/11 | $1,000.00 | Old Brookville, NY |
| 11/3/11 | $500.00 | Tamarac, FL |
| 11/3/11 | $500.00 | Miami Lakes, FL |
| 11/3/11 | $1,000.00 | Old Brookville, NY |
| 11/3/11 | $6,307.00 | Brooklyn, NY |
| 11/5/11 | $335.00 | Hollis, NY |
| 11/5/11 | $1,100.00 | Hollis, NY |
| 11/7/11 | $1,000.00 | Old Brookville, NY |
| 11/7/11 | $1,500.00 | Miami Lakes, FL |
| 11/7/11 | $1,800.00 | Brookhaven, PA |
| 11/7/11 | $7,921.00 | Hollis, NY |
| 11/8/11 | $1,041.00 | Old Brookville, NY |

| | | |
|---|---|---|
| 11/9/11 | $900.00 | Miami Lakes, FL |
| 11/10/11 | $8,107.00 | Brooklyn, NY |
| 11/10/11 | $750.00 | Pembroke Pines, FL |
| 11/10/11 | $800.00 | Philadelphia, PA |
| 11/10/11 | $1,450.00 | Upper Darby, PA |
| 11/10/11 | $1,500.00 | Old Brookville, NY |
| 11/12/11 | $400.00 | Philadelphia, PA |
| 11/12/11 | $1,200.00 | Old Brookville, NY |
| 11/12/11 | $1,215.00 | East Windsor, NJ |
| 11/13/11 | $1,000.00 | Brookhaven, PA |
| 11/14/11 | $1,000.00 | Old Brookville, NY |
| 11/15/11 | $3,100.00 | Pembroke Pines, FL |
| 11/16/11 | $2,400.00 | Aventura, FL |
| 11/17/11 | $5,424.00 | Hollis, NY |
| 11/18/11 | $920.00 | Valley Stream, NY |
| 11/18/11 | $1,000.00 | Miami Lakes, FL |
| 11/18/11 | $4,000.00 | Old Brookville, NY |
| 11/18/11 | $8,000.00 | Lawrence, NY |
| 11/21/11 | $1,000.00 | Old Brookville, NY |
| 11/22/11 | $1,100.00 | Hollywood, FL |
| 11/22/11 | $6,200.00 | Bronx, NY |
| 11/23/11 | $200.00 | Miami Lakes, FL |
| 11/25/11 | $500.00 | Miami Gardens, FL |
| 11/25/11 | $800.00 | Old Brookville, NY |
| 11/25/11 | $1,000.00 | Miami Gardens, FL |
| 11/25/11 | $1,500.00 | Bayside, NY |
| 11/28/11 | $400.00 | Philadelphia, PA |
| 11/28/11 | $4,025.00 | Hollis, NY |
| 11/28/11 | $4,101.00 | Hollis, NY |
| 11/28/11 | $8,520.00 | Brooklyn, NY |
| 11/29/11 | $1,800.00 | Hollis, NY |
| 11/30/11 | $400.00 | Tamarac, FL |
| 12/6/11 | $1,000.00 | Widener University, PA |
| 12/6/11 | $1,000.00 | Pembroke Pines, FL |
| 12/6/11 | $1,500.00 | Philadelphia, PA |
| 12/6/11 | $500.00 | Hollis, NY |
| 12/7/11 | $600.00 | Old Brookville, NY |
| 12/7/11 | $620.00 | Hollis, NY |
| 12/7/11 | $1,380.00 | Pelham, NY |
| 12/8/11 | $680.00 | Brookhaven, PA |

11

| 12/8/11 | $1,200.00 | Miami Gardens, FL |
| 12/8/11 | $500.00 | Old Brookville, NY |
| 12/8/11 | $1,000.00 | Brooklyn, NY |
| 12/8/11 | $8,582.00 | Brooklyn, NY |
| 12/12/11 | $1,000.00 | Miami Gardens, FL |
| 12/12/11 | $500.00 | Old Brookville, NY |
| 12/12/11 | $800.00 | Philadelphia, PA |
| 12/12/11 | $5,521.00 | Brooklyn, NY |
| 12/14/11 | $800.00 | Miami Gardens, FL |
| 12/14/11 | $2,000.00 | Pembroke Pines, FL |
| 12/15/11 | $5,300.00 | Wellington, FL |
| 12/15/11 | $1,100.00 | Forest Hills, NY |
| 12/16/11 | $1,100.00 | Old Brookville, NY |
| 12/16/11 | $1,400.00 | Bayside, NY |

22. Many of these deposits were made on the same day or on consecutive business days, and many of the same day deposits were done at different branches in the same geographic area, with total daily deposits exceeding $10,000. For example, on October 6, 2011, four cash deposits were made at four different TD Bank branches. The first was a $1,320 cash deposit made at a TD Bank branch in Miami Lakes, Florida. This was followed by a $2,785 cash deposit at a TD Bank branch in Tamarac, Florida. A third deposit of $7,000 was made at a TD Bank branch in Brooklyn, New York. Finally, a fourth deposit of $7,000 was made at another TD Bank branch located in Brooklyn, New York. The total amount of these four same-day transactions was $18,105.

23. Additionally, the structuring activity occurred at TD Bank branches located in Florida, New Jersey, Pennsylvania, and New York. However, there are no indications of Josh

12

maintaining any places of business or agents outside of Pennsylvania.

24.   As discussed above, pursuant to 31 U.S.C. § 5331 and related regulations, any trade or business that receives more than $10,000 in one or more related transactions, is required to file a form 8300 with the IRS.  However, despite the extensive cash deposit activity described above, my investigation has determined that Josh has not filed any form 8300s with the IRS.

25.   As set forth above, there is probable cause to believe that a sum of funds on deposit in the Target Account is subject to seizure and forfeiture as; (a) property involved in violations of 18 U.S.C. §§ 1956 and/or 1957, and therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1)(A); (b) funds traceable to the sale of narcotics and subject to forfeiture pursuant to 21 U.S.C. §§ 853 and 881; and/or (c) property involved in violations of 31 U.S.C. § 5324 and subject to forfeiture pursuant to 31 U.S.C. § 5317(c).

26.    Pursuant to 18 U.S.C. § 984, in any forfeiture action in rem in which the subject property is cash or funds deposited in an account in a financial institution, any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated:    Brooklyn, New York
          May 23, 2012

                                    _____
                                    James H. Grathwohl
                                    Special Agent
                                    Department of Homeland Security


Sworn to before me this
23rd day of May 2012


_____
HON. ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

14